## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

|  |  |  |
|---|---|---|
| MARTIN J. WALSH, | : | |
|  | : | |
| Secretary of Labor, United States | : | |
| Department of Labor | : | |
|  | : | |
| *Petitioner*, | : | CASE NO.: 1:20-cv-2138 |
|  | : | |
| vs. | : | |
|  | : | |
| ALIGHT SOLUTIONS LLC, | : | |
|  | : | |
| *Respondent.* | : | |

**DECLARATION OF ILENE GRANT IN SUPPORT OF MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR PROTECTIVE ORDER**

I, Ilene Grant, hereby declare under penalty of perjury:

1.      I am a Vice President and Associate General Counsel at Alight Solutions LLC ("Alight").

2.      I submit this declaration (the "Declaration") in support of Alight's *Motion for Protective Order*.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with relevant employees of Alight, and my review of relevant documents.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

4.      I have reviewed the Department of Labor's (the "DOL's") Subpoena and this Court's October 28, 2021 order.  In response, Alight is currently in the process of identifying, pulling, and producing additional documents responsive to the DOL's requests.  However, in reviewing the scope of the DOL's requests and the representations made by the DOL, Alight

1

remains very concerned about the broad scope of the Subpoena, specifically the DOL's broad requests for confidential and highly sensitive client and plan participant information.

5.      Specifically, Alight seeks judicial protection for three clearly defined categories of documents: (1) documents containing personal identifiable information ("PII"); (2) confidential settlement agreements involving Alight and its clients/others; and (3) client identifying information.

6.      Alight is a global cloud-based provider of integrated digital human capital and business solutions, including healthcare and retirement benefits recordkeeping services with headquarters in Lincolnshire, Illinois. Since our formation in May 2017, Alight has served as one of the leading providers of benefits administration, cloud-based human resources and related financial solutions in the industry. Alight's Employer Solutions include integrated benefits administration, healthcare navigation, financial health, employee wellness and payroll designed to support employers in effectively managing their workforce. Across all solutions, Alight has several thousands of clients across the United States serving tens of millions of plan participants.

7.      One of the services that Alight provides is recordkeeping services for employee benefit plans, including plans subject to the Employee Retirement Income Security Act ("ERISA") ("ERISA Plans") and plans that are not subject to ERISA.  These services may include: providing the architecture platform for the plan and its investment options, assisting with plan reporting including client benchmark and stewardship reports, providing administrative services and support to plan sponsors and plan participants, providing access to investment research, and providing compliance, regulatory, and legislative updates to plan sponsors.   Alight currently provides recordkeeping services to retirement or welfare benefit plans (including defined benefit plans,

defined contribution plans, and health plans) to several hundred clients and over twenty million plan participants.[1]

8.      As a leader in cloud-based and remote outsourcing, the security and confidentiality of client data is of paramount importance to Alight.   Our clients entrust Alight with highly sensitive information about their company and employee benefit plans including: total plan asset values, company contributions, the structure of company benefit plans, benefit plan designs, plan costs, and other market sensitive and proprietary information that would be detrimental if disclosed.  For example, some of Alight's clients base employer plan contributions on percentage of annual earnings of employees or final average pay of employees.  That information would be detailed in Alight contracts and other plan documents responsive to the DOL's requests.  If those sensitive, highly confidential compensation metrics were disclosed, there is nothing that would prevent a competitor of Alight's clients from reverse engineering the compensation provided to Alight's client's employees and using that information to lure away key employees.  For this reason, many of Alight's clients are very protective of their benefits and compensation information and rely on Alight to keep that information confidential.

9.      Furthermore, Alight is concerned about the possible security threats its clients would face if information about the client's retirement plans, most notably details about the security and access protocols for the plan, are disclosed.  The DOL's requests seek a wide-range of documents including investigation reports detailing Alight's clients' decisions on security and account access and potential gaps or deficiencies, contracts discussing the services the plans receive and detailing plans' security decisions, and information about the benefits that Alight's

---

[1] Alight's internal data systems segregate retirement plans by the category of services provided, not by their legal definition (*e.g.* ERISA Plans, Supplemental Employee Retirement Plans, Church Plans, etc.). While not all of the plans listed are ERISA Plans, a significant number of them are ERISA Plans.

clients provide to plan participants.

10.     Alight and its predecessor Hewitt Associates LLC has required multi-factor authentication and minimum password standards for all recordkeeping clients since 1998. In 2012, Hewitt Associates LLC began requiring a third authenticator for retirement plan financial transactions over a client-defined amount (default is $3,000). In 2018, in response to an evolving threat landscape, Alight began the process of systematically eliminating the use of personal and work email to transmit one-time codes (used for multi-factor authentication) and for facilitating password reset requests.

11.     Beyond these baseline security requirements, at any point in time, Alight has offered a range of security and access options from which its clients can choose to implement in their plans, including features such as biometric authentication, password expiration, or features related to the specificity of information necessary to confirm a plan participant's identity (*e.g.* requiring full or partial social security numbers).  There are a number of appropriate and valid reasons why a particular plan fiduciary may choose to implement or not implement certain security features.  For example, if the demographics of the plan's participant pool is older or has a lack of experience utilizing security tools implemented through smart phone technology, a plan fiduciary may decide to offer secure access options tailored to that population.

12.     Beyond Alight's baseline security controls, Alight does not have the authority to force a client to accept any or all of Alight's security protocols. To the contrary, it is the client's responsibility, as the plan's fiduciary, to determine what security options will best serve their plan participants and, thus, which security services to enable for the plan.  The contract and terms would then detail the client's decisions on how to set up the plan's security and access protocols.  Because each client's security and access protocols are tailored to the client fiduciary's choices, the public

disclosure of those security and access decisions would essentially give bad actors a road map of which plans to target and how. If a plan's security or access controls are disclosed or otherwise become compromised, illicit third-parties could easily identify the plans that the bad actors consider to be the most vulnerable to their tactics and create targeted schemes designed to circumvent those security features.

13. As a provider of recordkeeping services, Alight is further entrusted with sensitive and highly confidential plan participant data including: names, contact information (including home address, phone numbers, and e-mail addresses), social security numbers, asset information, investment information, beneficiary information, contribution levels, bank account and other financial account numbers in combination with a password, PIN, knowledge of answers to security questions or a security code that could permit access to a participant's account and potentially lead to identity theft. In Alight's experience, the majority of unauthorized access incidents are attributable to identity theft occurring outside of Alight's environment, specifically when participants' email accounts and/or personal devices are compromised through phishing attacks and/or malware. Therefore, limiting the number of locations of sensitive, client identifying information is of paramount importance to Alight as it seeks to protect its clients and their plan participants from cybersecurity and fraud threats.

14. One of the categories of documents that the DOL has requested in their Subpoena is investigation reports of cybersecurity and fraud incidents along with all corresponding communications related to those investigations. To date, these investigation reports make up more than half of the over four hundred documents produced to the DOL so far. These investigation reports contain highly sensitive details about Alights' clients and their plan participants, including details about the plans' security and access as well as highly confidential details about the plan

participants which can include, but is not limited to, social security numbers, contact information (addresses, phone numbers, e-mail addresses), asset information and banking information. The disclosure of this PII, especially in conjunction with the disclosure of plan security controls, therefore, creates a significant security threat as it provides bad actors not only with a road map to circumvent the plans' security measures but the plan participant information necessary to gain access to the account.

15.     In addition to sensitive PII, these investigation reports will sometimes contain embarrassing and/or dangerous details about the plan participant's role in the incident. In nearly every instance, Alight investigates allegations involving external threats of fraud perpetrated against the plan participants directly that do not involve a gap or failure on Alight's system. These investigation reports detail Alight's findings and would include a discussion of how a plan participant was susceptible to the tactics of bad actors (e.g. through an online romantic relationship or similar highly-personal tactic or certain family dynamics). The disclosure of these details, inadvertent or otherwise, would not only be embarrassing to the plan participants and, in some cases, their spouses and families, but it would also serve as an advertisement to bad actors on which plan participants have previously fallen prey to their tactics.

16.     The DOL also seeks confidential settlement agreements that Alight entered in with clients related to potential unauthorized access and disbursements with respect to client accounts. Alight did not enter any of these agreements as a fiduciary to any plan, nor did Alight exercise any fiduciary authority over any of the plans. To the contrary, these settlement agreements are explicitly limited to Alight's role as a non-fiduciary recordkeeper. Regardless, these settlement agreements often involve multiple parties, all of whom entered into the settlement agreement under the condition that the terms of the settlement agreement remain confidential. Alight, therefore,

cannot unilaterally overrule the express intent of all of the various parties to the agreement. Further, all of these agreements contain explicit confidentiality clauses that memorialized the parties' intent that the agreement remain confidential. In addition to being a clear violation of the agreements' confidentiality clauses, the disclosure of these settlements to the DOL would discourage future parties from entering into settlement agreements with Alight on these issues to the detriment of not only Alight but its clients and plan participants.

17.    Alight is contractually obligated to protect the confidentiality of their client plans' and their plan participants' sensitive and confidential information. While Alight's contracts vary from client-to-client, every contract contains a "Confidential Information" provision that designates, as confidential: (a) the terms of the agreement (including Schedules and other attachments to the Agreement); (b) Client Information;[2] (c) oral and written information designated by a party as confidential prior to the other party obtaining access thereto; and (d) oral and written information that should reasonably be expected to be treated as confidential by the recipient whether or not such information is designated as confidential. Moreover, our contracts affirmatively state that the client's confidential information will remain the client's sole and exclusive property.

18.    While each contract Alight enters into with its clients is unique, Alight's contracts each contain a confidentiality provision that requires Alight to exercise reasonable efforts to minimize distribution and duplication and to prevent unauthorized disclosure of the client's

---

[2] While Alight's contracts vary from client-to-client, Client Information is typically defined as "all data, information, images, text, content or materials (in whatever form or media) that are owned by Client, or licensed by third parties to Client including: (a) Participant Data; (b) Client's standard materials and derivations thereof; (c) Client's methodologies, techniques, templates, flowcharts, architecture designs, tools, specifications, practices, processes, inventions, formulae, models, samples, records and documentation, concepts, and know-how; and (d) all other materials or information in which Client has Proprietary Rights."

confidential information.  Alight's contracts generally require Alight to limit disclosure of client and plan participant information to those who have a need to know the confidential information and that this information will not be disclosed without the client's consent.

19.     Alight is not permitted to disclose a client's sensitive and confidential information without notice and, in many cases, the client's consent, even in response to a subpoena.   Many of Alight's contracts further permit the client to withhold consent for any reason or condition without the execution of a confidentiality agreement reasonably acceptable to the client.  Alight's contracts, however, do allow Alight to use de-identified plan or plan participant data for any purpose provided that no data is identifiable to any third party as relating to the plan participant, plan or client.  Alight has currently reached out to our clients regarding the DOL's subpoena in anticipation of making further productions in response to the DOL's requests.

20.     Upon reviewing the enforcement petition, I am aware that the DOL alleges in Paragraph 3 of the declaration in support of the enforcement petition ("Loggins Allegations") that Alight: (1) "processed unauthorized distributions as a result of cybersecurity breaches relating to its ERISA plan clients' accounts;" (2) "failed to immediately report cybersecurity breaches and the related unauthorized distributions to ERISA plan clients after its discoveries;" (3) "failed to disclose cybersecurity breaches and unauthorized distributions to its ERISA plan clients for months, if at all;" and (4) "failed to restore the unauthorized distribution amounts to its ERISA plan clients' accounts."

21.     Alight was, and remains, surprised by the allegations contained in the Loggins Allegations.  Prior to the enforcement petition, the DOL never shared these allegations or concerns with Alight.  Alight is unaware of any factual situation that meets any of the criteria outlined in the Loggins Allegations.

22.　　While Alight has yet to identify any incidents that match the Loggins Allegations, Alight has repeatedly requested that the DOL identify the ERISA Plans referenced in the Loggins Allegations so that Alight can take immediate steps to ensure the safety of its clients and their plan participants, including: communicating with the client, placing freezes on accounts that may be compromised, and working with law enforcement to supplement its investigation. Alight further committed to investigate the alleged incidents and remediate any identified issues resulting from Alight security deficiencies and to share its findings with the DOL. If the DOL's allegations are correct, it is in everyone's best interest – the plan participant(s), the ERISA Plan(s), the DOL and Alight – for Alight to investigate and remediate the issues as soon as possible.

23.　　Alight has further offered to provide the DOL with unredacted documents, including communications, contracts, and investigation reports related to the incidents referenced in the Loggins Allegations incorporated into DOL's Motion to Enforce. Alight maintains that this proposal is in the best interest of all parties involved. It provides the DOL with all of the information surrounding the specific incidents that prompted the DOL's investigation, it helps Alight identify whether there are any issues that require remediation so as to better protect our clients, and it minimizes risk of disclosure for all of Alight's clients' plan participants. To date, the DOL has steadfastly refused to provide the identity of the ERISA Plans or plan participants referenced in its Motion to Enforce.

\* \* \*

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

9

November 17, 2021

DocuSigned by:

Ilene Grant

678003D6F12A4C1...